Filed 11/7/13  P. v. Hall CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072558 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F00911) |
| v. | |
| RICARDO LYNN HALL, | |
| Defendant and Appellant. | |

In the early morning of January 23, 2010, in Del Paso Heights, 18-year-old defendant Ricardo Lynn Hall shot victim Mathew Maurizzio twice from three to four feet away, including fatally in the heart.  The circumstances of the shooting were these: Maurizzio had about $1,000 on him and wanted to buy drugs.  When defendant learned about the money, he and two friends talked about robbing the victim.  Defendant, with a gun in hand, demanded money from the victim.  The victim pushed past defendant. Defendant said the victim had disrespected him, and defendant's friend yelled at defendant, " 'don't do that.' "  Defendant shot the victim anyway.

1

About eight months before defendant shot the victim, defendant told a friend, "he wanted to know what it felt like to kill somebody," just after he had unsuccessfully tried to choke a cat.

At trial in this case, defendant testified on his own behalf that there had been some discussion about a drug swap between one of his friends and the victim. The victim walked past defendant but then stopped. Defendant had a gun in his pocket "in case something happened." Defendant's friend told defendant to give him the gun, and as defendant pulled it out, he noticed the victim staring at him. The victim started coming at defendant. Defendant earlier had been told that the victim had a knife, so defendant thought the victim was going to stab him. Defendant had been stabbed in the past.

A jury found defendant guilty of first degree murder with the special circumstance that it was committed during an attempted robbery and found him guilty of attempted robbery. The jury also found true that defendant committed both crimes by personally discharging a firearm. The trial court sentenced him to life without the possibility of parole for the special circumstance murder.

Defendant appeals, raising two evidentiary issues and two sentencing issues. We will strike the parole revocation fine and affirm the judgment as modified.

DISCUSSION

I

*The Court Did Not Abuse Its Discretion In Admitting Evidence Defendant Told His*
*Friend That He Wanted To Know What It Felt Like To Kill Somebody*
*To Show His Intent To Kill Here*

Defendant contends the court violated his federal constitutional right to a fair trial when it admitted evidence that eight months before the murder, defendant told his friend "he wanted to know what it felt like to kill somebody," just after he had unsuccessfully tried to choke a cat. The court admitted the evidence as relevant to show defendant's intent to kill in this case. We find no abuse of discretion. (See *People v. Coffman and*

2

*Marlow* (2004) 34 Cal.4th 1, 76 [routine application of state evidentiary law does not implicate a defendant's constitutional rights]; *People v. Harris* (2005) 37 Cal.4th 310, 337 [a trial court's rulings on admission of evidence are subject to review for abuse of discretion].)

Defendant's statement was "relevant evidence" because it had a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, §210.) The fact of consequence was defendant's intent to kill the victim, because intent to kill was an element of the murder committed here. That fact of consequence was disputed because in closing argument, defense counsel argued there were many reasons to believe defendant was not guilty of murder, among them that defendant did not intend to kill the victim. Defense counsel acknowledged the existence of defendant's statement in his closing, but he argued to the jury the evidence was introduced to evoke "passion against [defendant]."

Not so, because the trial court's decision to admit the evidence was also not an abuse of discretion under Evidence Code section 352. That code section allows a trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Here, the evidence that defendant tried to choke a cat to death was mitigated by the relatively benign description of the act at trial. Namely, defendant's friend testified only that defendant "caught the cat, he grabbed the cat and he tried to choke it, and the cat's stretching his hand and stuff, and he dropped it. And that's when the conversation started talking about it." He added that the cat scratched defendant, which was when defendant dropped the cat. Without a description of the context in which defendant's statement was made, the statement would have made little sense. The trial court therefore did not abuse its discretion in admitting this evidence at trial.

## II

*The Trial Court Was Well Within Its Discretion To Exclude*

*Evidence Defendant Had Been Stabbed By A Drug Addict In The Past*

Defendant contends the court violated his federal constitutional right to a fair trial when it excluded state-of-mind evidence that six or seven months prior to the murder, defendant had been stabbed by a crack addict in the same area where the murder occurred. The trial court sustained the People's relevancy objection, stating the following: "[T]he Court rejects the defense desire to say that since there's testimony that the victim was using drugs, that everybody who is associated with drug use is in that category and that third party threats or violence directed towards the defendant are admissible in front of the jury." The trial court was well within its discretion to exclude this evidence. (See *People v. Coffman and Marlow*, *supra*, 34 Cal.4th at p. 76; *People v. Harris*, *supra*, 37 Cal.4th at p. 337.)

The case on which defendant relies, *People v. Minifie* (1996) 13 Cal.4th 1055, is distinguishable. In *Minifie*, the defendant (Minifie) had shot a member of the Knight family in self-defense. He was not prosecuted for the killing. Several years later, he encountered Tino, an associate of the Knight family and a pallbearer at the deceased's funeral, in a bar. Tino challenged Minifie, asking, " 'So it was you?' " (*Id*. at p. 1060.) Tino then punched Minifie, knocking him down, and threatened to hit him with a crutch. Minifie fired shots at Tino, wounding him and another man. At trial, Minifie claimed he acted in self-defense. (*Id*. at pp. 1060-1061.) The trial court excluded evidence that the Knight family and their associates had an extensive reputation for violence, that Minifie and his wife had been repeatedly threatened by friends of the Knights, and that associates of the Knight family killed Minifie's friend. (*Id*. at pp. 1061-1063.) On appeal, the California Supreme Court concluded exclusion of the evidence was prejudicial error. (*Id*. at pp. 1060, 1071.) The reputation of the " 'Knight crowd' " was offered to explain

4

Minifie's state of mind and exclusion of the threats to Minifie limited his essential right to argue that his actions were justified. (*Id*. at pp. 1066-1067.)

This case is distinguishable from *Minifie*. Here, there was no evidence the past stabbing involved the victim or any of his associates. As the trial court correctly noted, the fact that defendant has been stabbed previously by a drug addict in the same neighborhood did not make all drug addicts in that neighborhood (including the victim) part of a category of people who stab others. The trial court was well within its discretion to limit the details of the stabbing.

III

*Defendant's Sentence Was Not Cruel And/Or Unusual*

Defendant contends, as he did in the trial court, that his life-without-parole sentence was cruel and/or unusual punishment under the federal and state Constitutions. He notes that he was 18 years and three months old at the time of the shooting, and while an adult, he was still relatively youthful and came from a broken home and had his own substance abuse problems and untreated mental health issues.[1]

The Eighth Amendment to the United States Constitution proscribes "cruel *and* unusual punishment." (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117], italics added.) Article I, section 17 of the California Constitution proscribes "cruel or unusual punishment." Although this language is construed separately from the federal constitutional ban on "cruel and unusual punishment" (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1085), the method of analysis is similar: the reviewing court considers "the nature of the offense and/or the offender, with particular regard to the

---

[1] Defendant's parents were unmarried and his father is incarcerated for murder. Both his mother's and father's parental rights have been terminated, and defendant spent much of his childhood in and out of group homes. He smoked marijuana and cocaine daily. At the time of sentencing, defendant had a two-year-old son. Since his incarceration, defendant has been taking medication for depression.

degree of danger both present to society"; the comparison of "the challenged penalty with the punishments prescribed in the same jurisdiction for different offenses"; and the comparison of "the challenged penalty with the punishments prescribed for the same offense in other jurisdictions . . . ." (*In re Lynch* (1972) 8 Cal.3d 410, 425-427, italics omitted.) We are not required by state or federal law to engage in the second and third prongs of the analysis. (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196-1198.) The purpose of this analysis is to determine whether the punishment is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch,* at p. 424, fn. omitted.)

Here, the trial court found the sentence of life without parole appropriate, given that the crime "involve[d] great violence" of shooting the victim "right in the heart," the use of a gun that was taken to the scene by defendant, and a defendant who was on juvenile probation and who had prior juvenile adjudications. The record showed the following with respect to defendant's juvenile adjudications: Defendant had misdemeanor adjudications for unlawfully causing a fire that caused great bodily injury and for repeatedly falsely identifying himself to police officers. He had felony adjudications for stealing items from Sears and a grocery store. He had repeated violations of probation. All of this evidence militates against a finding that defendant's sentence was cruel and/or unusual. Added to these facts were additional ones before the court, including that since his incarceration on this case, defendant had been involved in 31 incidents, with 19 classified as major, including hiding shanks in jail, and three separate assaults on inmates, one which included a gang-related sexual assault.

Under these circumstances, we cannot say that a sentence of life without the possibility of parole for a senseless murder at close range committed by an 18-year-old who had a prior juvenile record and was on juvenile probation at the time was "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch*, *supra*, 8 Cal.3d at p. 424.)

6

IV

*The Parole Revocation Fine Must Be Stricken*

Defendant argues, and the People concede, that the judgment must be modified to strike a $10,000 parole revocation fine that was imposed and suspended pursuant to Penal Code section 1202.45. "When there is no parole eligibility, the [parole revocation] fine is clearly not applicable." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1184.) Because defendant was sentenced to life in prison without parole, he is not eligible for parole, and the parole revocation fine must be stricken. (*People v. McWhorter* (2009) 47 Cal.4th 318, 380.)

DISPOSITION

The judgment is modified to strike the parole revocation fine. The clerk of the superior court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.


ROBIE          , J.



We concur:



NICHOLSON     , Acting P. J.



DUARTE     , J.


7